Good morning, Your Honors. Good morning. May it please the Court, I am Conrad Gregory Bedar. I am here on behalf of the petitioner Tongxi Wang. Now generally this case is the petitioner's story of religious persecution by the Chinese authorities, but specifically when we drill it down, this case is a compelling story of enforced religious deprivation. Now what do I mean by that? What I mean is that in 2012 the petitioner was compelled to leave his home, his wife, his family, and his culture principally on his account of enforced religious deprivation. Can you address the credibility challenges and how do you get over that? I'm sorry, I have a hearing impairment. I'm so sorry. No, that's okay. Can you address the credibility finding and how you get over that? Yes, yes, I was going to do that. To be sure, when Tongxi Wang presented his testimony at his May 16th, May 2016th evidentiary hearing, it was not a shining moment. His testimony did conflict internally and with both of his declarations and his sister's affidavit and the other corroborating documentation of his household registration booklet. The immigration judge... You're not arguing that the average credibility determination is not supported by substantial evidence? For those limited portions, correct. As it relates to the petitioner's account of past persecution for those first two days, on the record it appears that his inconsistent testimony does impact his credibility. However, what I want to focus on today are the strengths of the petitioner's testimony, namely that the petitioner did testify that he, as a condition of his release... Hold on. You're conceding that the credibility finding is correct and that they are inconsistent as to those points. You're conceding that right now. As to the testimony as it relates to... Do you really want to concede this? I really am tired of petitioners' counsel coming here and conceding their petitioner's case. Let me ask you something. We've sent out numerous orders to you asking for responses in this case. It was closed for a while administratively. You haven't responded at all. The current motion that you filed is a motion to dismiss petitioner's case. Is that zealously representing your client? I am zealously advocating for my client's interest because that is what he has expressly authorized me to do. Why? Because he has earned lawful permanent residence since May of 2022. Why haven't you filed any documentation to that effect? Why are we here? Right, Your Honor. That's what I did in my motion. Why didn't you say this for the first... He has lawful permanent residence now? Yes, he does, since May of 2022. Have you filed any papers demonstrating that? Yes, included as an exhibit in my motion to dismiss the PFR. So if he has lawful permanent residence, which the agency grants through one hand of its operations, why is the other part of the agency trying to enforce a deportation order? Yes, Your Honor. Months ago, I had related the same, as I'm discussing right now, to oil, and I was instructed to by both the clerk and... What clerk? Which clerk? What clerk? Clerk of what? Deputy clerk here. Which clerk? What's the name? Well, it's not Susan Gelmas, but someone before that. But Susan Gelmas knows what I did file, and she instructed me that I was not permitted to withdraw the petition, that the court wanted to hear remarks from the petitioner. Have you filed anything to reopen in the BIA, I mean, to resolve this interagency conflict that Judge Wardlaw has identified? So have you filed anything in the BIA reflecting the lawful permanent status that your client now has? What I did file was a, when the enforcement priorities were in effect with DHS, was a request to, for prosecutorial discretion on this matter. But do you understand whether your client has a right to reopen the proceedings before the BIA given this change in conditions to address the underlying removal order? I understood that I had to dismiss the matter here before I could... In order to do it in the BIA, your understanding is that the BIA would not allow you to reopen before the dismissal of the matter here? That has been my experience before.  Wait, that's been your experience, but as to this case... Not as to this case, Your Honor. As to this case. I mean, that's why we were issuing all these orders for information from you, is because we saw that his wife had had her status adjusted. We could see that. But we can't see from the agency's administrative record evidence of the lawful permanent resident status of your client. Included in the record as an exhibit is the I-730 approval. But we don't have the agent's administrative record from the agency as to that. I hear the Court's words, and I did not obtain the documentation that the Court's informed. Usually the agency provides it to us. Did they know about... They being the USCIS? I don't know. Okay. Why don't you reserve your three minutes? And maybe the agency can shed some light on this. Okay. Great.  Good morning, Your Honors. May it please the Court. My name is Linda Chang. I was representing the U.S. Attorney General in this matter. Unfortunately, my office was also in the dark for most of this case regarding his adjustment to lawful permanent status. We learned about that on Friday, just a few days ago. How did you learn about it? I called through various channels within USCIS and finally got a hold of someone who could tell me this. However, I do not have the documentation for it. It was just a conversation that I had. But it's true? This is... Yes, this is apparently true. So are you going to withdraw the deportation order? So that deportation order is something that the petitioner and the agency need to work out. At this point, we do not oppose his motion to withdraw the PFR in this court because his own asylum application is irrelevant, as he has obtained legal status. So it is something that he needs to work out with the agency at this point, and this court is no longer, or my office is also no longer, playing any roles in his application for asylum because it is not needed. Well, if that's the case, I mean, what's the agency's general practice that now, and to the extent you can speak to it, where there are now grounds that you concede that he's not removable, given the change in the status. Why is it up to the petitioner to do that when the agency, the executive, which we sometimes think of as unitary, has this information? Why can't it do something about it? So this case is in a different and unique posture. Typically, when petitioners reach out to our office regarding the potential to adjust, they do have something that is pending before USCIS in terms of a benefit, and therefore, we would have them request a joint motion to reopen with DHS before the board and then have it sent back down to be adjudicated before the immigration judge for the relief that they request. However, his relief has already been granted at this point, which is unique here, and therefore So are you arguing that this is moot? Yes. But I guess what's puzzling to me, at least, is that this is in a category of cases that I understand have been held in kind of administrative abeyance for years, and it would have taken, as I understand it, the agency to take an affirmative step to reactivate this case, get us all involved in this, reactivate, you know. Is there never any, did one hand check with the other with respect to whether this case should be reactivated? I guess my concern is, given the number of cases that are in this status, and that, as I'm sure you well understand, that are quite stale now, as in this case, that the agency and OIL would be seeking to reactivate cases without checking to see whether they were moot. I understand your concern, Your Honor, but as I said, our office only knew that he had the approved 730, which he had filed in 2021 before we put this case into JEC. At that point, we thought he was going to do something with that. He did not tell us that any further progress had been made with that application, so we assumed that he was just still at a standstill, and so as we took it out of JEC, we thought that that would be something that we need to address with him, or pursue, or somehow figure out, but he never reached out to us. Ms. Chang, might I recommend that OIL place that call before it takes something off of the administrative stay, so that we know that we have a case rather than after? I do understand that frustration, Your Honor. However, again, this is, the information that you seek is within petitioner's hands. He has known since 2023 that he was in LPR. We did not, we were not notified that he was in LPR until I reached out, Office of Immigration of Litigation, my office. Litigation, OIL did not know, even though USCIS had granted the relief. That is correct. Certainly, I understand your predicament, but I also hope you understand at least my concern, particularly with all of these cases held in abeyance, that the I's are dotted and the T's are crossed to make sure that you still have a case before you ask us to renew our review of the petition. Understood. So, what do you think we should do with this case? Because, frankly, I was, until I heard the argument, I was inclined to grant the petition, because I don't think the adverse credibility determination here is supported by substantial. This is just speaking for myself. So, I don't know if he's better off if we could just go ahead and grant it, or if he's better off if we just dismiss it, or if the next step is you need to make a joint motion to reopen before the immigration agency to say, hey, he's a lawful permanent resident, so we can't deport him, or, because we've got to get the deportation order off the record, or he could be, his client could be deported, even though he has the right to remain in the United States. That's right, Your Honor. So, as I had said earlier, normally, while we have a petitioner who has pending relief, we would advise that they need to file a joint motion to reopen with DHS before the Board of Immigration Appeals, and reopen, and then get it before the immigration judge to have their relief adjudicated. In this case, since he already has relief, we believe that this PFR can be withdrawn, as he has filed in his motion, or requested in his motion, because this PFR is moot at this point. So, you're saying grant the motion to withdraw? That's correct. That's not the same as saying that the order of removal is moot? Not technically, no, Your Honor. That's an important technicality. That is something that a petitioner would need to work out with agency at this point. Like I said, because his petition for review is no longer relevant to his obtaining status, I believe that my office and this court no longer have a role in his pursuit of that relief. But it's still on the books with the agency? That's correct. You can see how that might be unsatisfactory in terms of full relief here, given that we have a petition in front of us, and we may have concerns about whether the agency action is supported by substantial evidence, that we're relying on, we'll say, a complicated bureaucratic apparatus to ensure that the petitioner here is entitled to the relief that the government has granted him. So, if we were to grant the petition and remand, that's in effect reopening the proceedings? That would be reopening proceedings. However, you actually would be putting him back into proceedings, and the immigration judge might want to hear the case all over again, which actually puts him further back in his relief pursuit, rather than... So, maybe we should be asking, but why hasn't... Why haven't you filed a joint motion to reopen yet? That would be his request. He needs to request it. So, my understanding is when we first sent this to... When we first administratively closed it, it was for it to go to mediation, because there was this existence of the adjustment of status. So, why didn't this come up in the course of mediation? It came up in mediation that he was going to pursue this route, and he did not inform anyone in this courtroom that he actually achieved that. You're right. That's true, including us, including the court. Would that be worth, given the concerns about the state of the petition for review, and the uncertainty about where this ends, would it be worth... And obviously, this has been... The order has been around on the books for quite a while now, for us to hold off and allow the parties before we act to sort this out, before we relinquish our jurisdiction, with respect to that order of removal? That could be one option, Your Honor. But, like I said, he already has his relief available, or relief obtained. He is an LPR at this point. How about we send it back to mediation where it was, require the parties to mediate? He can show proof of his lawful permanent resident status, and you could jointly move to reopen at that point. Would that work? That could work, Your Honor. Ms. Chang, again, I appreciate that you're in a spot, and I also appreciate your constructive answers to the questions. I understand that you don't know everything that's going on, and that we're all in the I think we all do, because we honestly didn't dismiss this case because we wanted to hear an attempt to sort out what's going on in this case. I understand. Thank you so much. Mr. Bader, do you object to being sent back to mediation? I object. Okay. All right. I will not be submitting this case at this time, and we will issue the appropriate order after we discuss where we should go with this. Thank you. Counsel.
judges: WARDLAW, MENDOZA, JOHNSTONE